FILED
Clerk
District Court
JAN 04 2018
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| KSA CORPORATION and IL HWAN KIM,<br><br>  Plaintiffs,<br><br>vs.<br><br>JIN AN HUN, EUN TAEK JEONG, JOANN P. HENSLEY, OSCAR M. BABAUTA, RAMON S. SALAS, and DOES 1–10,<br><br>  Defendants. | Case No.: 16-cv-00015<br><br>**DECISION AND ORDER GRANTING DEFENDANT SALAS'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiffs KSA Corporation and its president Il Hwan Kim have brought a civil RICO claim and two claims under the law of the Commonwealth of the Northern Mariana Islands ("CNMI") against Defendants Jin An Hun, Eun Taek Jeong, Joann P. Hensley, Oscar M. Babauta, Ramon S. Salas, and Does 1–10 for allegedly defrauding them and taking their money by pretending to help them with a hotel/casino investment on Saipan. Defendant Babauta has previously been dismissed from the action. (*See* Minutes for Aug. 24, 2017, ECF No. 46; Order, Jan. 2, 2018, ECF No. 64.) Before the Court is Defendant Salas's motion for summary judgment. (ECF Nos. 54, 55.)

The motion has been fully briefed and the Court has reviewed all of the submissions.[1] Argument was heard on December 20, 2017, and the Court took the motion under advisement.

---

[1] Defendant's Motion for Summary Judgment and Memorandum in Support, ECF Nos. 54, 55; Salas Declaration, ECF No. 56; Plaintiffs' Opposition, ECF No. 60; Plaintiffs' Exhibits A-F, ECF No. 60-1 to 60-7; Defendant's Reply, ECF No. 62; Salas's Supplemental Declaration, ECF No. 62-1; Nicholas Declaration and Exhibits A-J, ECF No. 62-2; Deleon Guerrero Declaration, ECF No. 62-3.

1

For the reasons articulated below, Defendant's motion for summary judgment is GRANTED.

## II.     FACTUAL BACKGROUND

In December 2006, Kim, a citizen of Korea, came to Saipan as a tourist and based on his observations, decided to invest in a new tourist destination with thirty to fifty million dollars. (Compl. ¶¶ 5, 17–19.) He met Defendant An, also a citizen of Korea, who offered to assist him with the investment. (*Id*. ¶¶ 6, 20–21.) An introduced Kim to Defendant Taek, also a citizen of Korea and a longtime resident of Saipan, who also promised to assist with the investment. (*Id*. ¶¶ 7, 24, 26.) Because Kim did not speak or read English, An and Taek offered to handle the financing and permitting process as they spoke Korean and English and knew "all of the key players." (*Id*. ¶ 27–28.) Kim was instructed by An and Taek to wire funds to them on numerous occasions so that they could use the funds for the project. (*Id*. ¶¶ 29, 31.) During this time, An and Taek also introduced Kim to Salas and other government officials. (*Id*. ¶ 30.) As set forth in greater detail in the complaint, these individuals, including Hensley, allegedly engaged in a scheme to steal Kim's money by pretending to help him with his investment. (*See generally id*.)

Relevant to this order, however, are the allegations involving Salas, an employee of the Department of Public Lands until late 2007 and then again beginning in October 2011. (*See* Salas Decl. ¶¶ 9, 12, ECF No. 56.) The following are allegations relevant to the motion, taken from the complaint, Salas's Declaration attached to the motion, and Kim's Declaration attached to Plaintiffs' Opposition, and read in the light most favorable to the non-moving party:

- Taek spoke to Salas about leasing a parcel of public land in San Antonio Village for the investment. (Compl. ¶ 37; Salas Decl. ¶ 4; Kim Decl. ¶ 22.)

2

- Salas arranged a meeting for Kim with the CNMI governor to discuss Kim's investment plans. (Salas Decl. ¶ 7; Kim Decl. ¶ 24.)

- On behalf of the CNMI, Salas traveled to Korea with Taek and several others to look into Kim's financing, and concluded that Kim had sufficient assets to pursue his investment plans. (Compl. ¶ 52; Salas Decl. ¶ 8; Kim Decl. ¶ 25.)

- After Kim's lease was approved, Kim asked Salas how long KSA had to prepare the financing for the project and construct the resort. (Compl. ¶ 46; Kim Decl. ¶ 27.) Salas told him that he had two years from the date of the execution of the lease. (*Id.* ¶ 47; *Id.*)

- When Salas's employment contract with DPL was not renewed, his employment with DPL ended in November 2007. (Salas Decl. ¶ 9.)

- Kim's lease was cancelled by DPL on May 29, 2008 (Deleon Guerrero Decl., Ex. B, ECF No. 62-3), and Kim was informed by An about the cancellation the following month. (Compl. ¶ 64; Kim Decl. ¶ 34.)

- Kim met with Salas in September 2008 to hire him as a consultant. Salas was to assist Kim with getting the lease restored and would be paid $60,000. (Compl. ¶¶ 66–67; Salas Decl. ¶¶ 10–11; Kim Decl. ¶¶ 31, 35; Consultant Contract, Ex. A to Salas Decl.) To pay Salas, Kim wire transferred funds to An. (Compl. ¶ 68; Kim Decl. ¶ 35.)

- After Kim hired Salas, Salas hid the fact that DPL requested that Kim enter into final negotiations for moving forward with the investment. (*Id.* ¶ 82(f).)

- On October 16, 2009, An told Kim that he needed to pay money to the governor to restore

the lease. (Compl. ¶ 70.) Salas was supposed to deliver the money, but allegedly did not do so. (*Id*. ¶¶ 70–71.) The complaint states that the amount demanded was $140,000, and that Kim wire transferred the funds to An at San Jose Market, who was supposed to give them to Salas. (*Id*.) Salas allegedly was supposed to deliver the funds to the governor but did not do so. (*Id*.) However, Kim states in his Declaration that the amount demanded was $100,000. (Kim Decl. ¶ 37.) Kim claims to have wired $50,000 to AJ Poker where Salas was supposed to pick it up. (*Id*.)

- "On information and belief," Babauta and Salas demanded that Kim change the name of KSA prior to renewing the lease. (*Id*. ¶ 77.)

- In 2010, a competitor obtained the blueprints for Kim's project from, "on information and belief," Salas, Babauta, or both. (*Id*. ¶ 82(g).)

- After Kim's project fell through and his E2C visa was denied, Salas again allegedly approached Kim in late 2013 to convince him to continue trying to obtain a land lease. (*Id*. ¶ 94; Kim Decl. ¶ 47.)

After these events transpired, Plaintiffs initiated this lawsuit by filing a verified complaint signed by Eddy Hocog, the vice-president of KSA Corp. (ECF No. 1.) In the complaint, Plaintiffs bring four claims: civil RICO in violation of 18 U.S.C. § 1962(c); conspiracy to violate section 1962(c) under 18 U.S.C. § 1962(d); fraud; and aiding and abetting fraud. (*See generally id*.) The parties have completed discovery, which closed on November 2, 2017. (*See* ECF No. 51.)

As part of the civil RICO claims, Plaintiffs allege that Salas and the other defendants were part of an association-in-fact enterprise with a scheme to obtain Plaintiffs' confidential information and

4

money. (Compl. ¶ 108.) The enterprise also made bribe payments "to and through Defendant Salas" as part of the scheme. (*Id.* ¶ 114(d).) Further, Salas "extorted money" from Plaintiffs to obtain approval of the project and lease agreement. (*Id.* ¶¶ 114(f), 134.) In particular, Salas demanded payments on the four following occasions: August 1, 2007; September 2008; October 16, 2009; and July 2013. (*Id.* ¶ 135.)

### III. LEGAL STANDARD

On a motion for summary judgment brought by a defendant against a plaintiff's claims, there is a "shifting burden of proof." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). As set forth by the Ninth Circuit in *In re Oracle*, 627 F.3d at 387:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id*. at 325, 106 S. Ct. 2548. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324, 106 S. Ct. 2548. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor.

### IV. DISCUSSION

Salas seeks summary judgment on all claims. Plaintiffs contend that they have sufficiently

raised questions of material fact to defeat the motion.

### A. RICO Claim under Section 1962(c)

Salas maintains that he has not participated in a pattern of racketeering because there is no evidence to show he received bribes or extorted money from Plaintiffs by threatening to withhold approval of their project. (Motion at 10.) Plaintiffs argue that "there is a clear pattern of activity" with "dozens of predicate acts over a period of years." (Pls. Opposition 21, ECF No. 60.) At the hearing, Plaintiffs further asserted that for this claim, including the conspiracy claim, they need not prove that Salas himself actually committed two or more predicate acts, but only that the enterprise did so.

An element of any RICO claim is that the defendants must engage in a pattern of racketeering. To constitute a pattern, "there must be at least two acts of racketeering activity within ten years of one another," and even if there are two such acts, they may not be sufficient. *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). Furthermore, where the claim is a substantive violation of section 1962(c)—not a conspiracy charge—"each individual defendant must be shown to have personally participated in a pattern of racketeering activity," *i.e.*, participated in two or more predicate acts. *Cmte. to Protect Our Agric. Water v. Occidental Oil and Gas Corp.*, 235 F. Supp. 3d 1132, 1172 (E.D. Cal. 2017) (quoting *Zazzali v. Ellison*, 973 F. Supp. 2d 1187, 1200 (D. Idaho 2013)); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) (same).

In support of their argument, Plaintiffs submitted Kim's Declaration (ECF No. 60-1), a spreadsheet that he prepared to show the wire transfers he made (ECF No. 60-3), Salas's deposition (ECF No. 60-4), a copy of the land clearing permit (ECF No. 60-5), and Salas's consulting contract.

6

(ECF No. 60-6.) Plaintiffs have also filed a verified complaint, which typically may serve as evidence provided that the information is based on a plaintiff's personal knowledge and sets forth "specific facts admissible in evidence." *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); Fed.R.Civ.P. 56(c)(4). In this case, the verified complaint was subscribed to as being true and correct by Mr. Eddy A. Hocog, Jr., vice-president of KSA Corporation. Hocog is not mentioned anywhere in the factual allegations as being present or a participant in any of the meetings to show personal knowledge. Therefore, the facts in the verified complaint are inadmissible evidence.

Considering the remaining documents, Plaintiffs have failed to show that there is a question of material fact as to whether Salas participated in a pattern of racketeering. Plaintiffs allege that Salas' predicate acts consist of violating 18 U.S.C. § 1951—interference with commerce by threats or violence—by demanding payments from Plaintiffs on more than two occasions. (Compl. ¶ 134.) Specifically, Plaintiffs allege that Salas demanded payments on August 1, 2007, September 2008, October 16, 2009, and July 2013, "to proceed with the permitting." (*Id.* ¶ 135.) The allegations in paragraph 135 cannot be relied on as evidence despite being in the verified complaint because they are based on "information and belief," not Kim's personal knowledge, and no source of the belief or information is provided. *See Kelly v. Sec. Pac. Nat'l Bank*, 954 F.2d 727, at *2 (9th Cir. 1992) (unpublished) (holding court did not abuse discretion by finding complaint inadmissible because there was no demonstration of plaintiff's personal knowledge and no explanation of sources from which beliefs were derived, citing *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978)).

Kim also states in his Declaration that in October 2009, Salas, as interpreted by An, told him to pay $100,000 to be split between Salas and Governor Fitial, and that Kim then wired $50,000 to AJ

Poker for Salas and that Salas was supposed to pick it up. (Kim Decl. ¶ 37.) He also states that the attached spreadsheet of wire transfers was created by him and is accurate. (*Id*. ¶ 16.) The spreadsheet shows no wire transfer in October 2009 and no transfer around that time in the amount of $50,000. (*See* ECF No. 60-3.) Thus, Kim's allegation is contradicted by his own documentary evidence. The Court therefore finds that a reasonable fact-finder would not credit the allegation. Plaintiffs' counsel argued that Kim's spreadsheet item number 11 shows a payment of $80,000 to AJ Poker sometime in 2009, and that this payment corroborates Kim's statement. However, this argument is pure speculation; the actual amount transferred is neither the full $100,000 allegedly demanded nor the $50,000 that Kim declared he actually wired. Moreover, to the extent that Plaintiffs rely on 18 U.S.C. § 1951 as the predicate act, during this time Salas was not employed by DPL and therefore could not be acting under color of title.

Thus, all that remains are the two acts demanding payments referenced in paragraph 134 of the complaint as having been committed by both Salas and Babauta. However, there are no dates for the acts, and Plaintiffs have failed to provide evidence to substantiate these allegations. Although on summary judgment the Court must construe the facts in favor of the nonmoving party, that party "cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact" when it relies only on its own affidavits. *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 719 (9th Cir. 2012). Here, although Plaintiffs have submitted additional evidence to support Kim's Declaration, the spreadsheet, land permit, contract, and Salas's deposition do not address these alleged two acts of extortion. As discussed previously, the verified complaint is not admissible evidence. Accordingly, because there are no additional facts to substantiate the alleged two incidents, there is no evidence to

8

create a question of material fact to counter the motion for summary judgment.

In sum, there is no evidence to show that Salas committed two or more predicate acts, and therefore no pattern of racketeering, and the section 1962(c) claim must be dismissed.

**B. RICO Conspiracy Claim under Section 1962(d)**

Unlike a section 1962(c) claim, under a section 1962(d) conspiracy claim, not every defendant must have carried out two predicate acts. To prove a section 1962(d) claim, a plaintiff must show either "an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

Plaintiffs argue that the evidence demonstrates that a conspiracy existed because all Defendants used Kim's money and pretended to assist Kim with his investment. (Pls'. Opposition 23.) Plaintiffs clarified at the December 20 hearing that the money Salas obtained under the consulting contract is evidence that he agreed to participate in the conspiracy, because under ethical rules he was not permitted to enter into the consulting contract.

The verified complaint, Kim's declaration, and the other evidence do not show that Salas agreed to commit a RICO violation or show agreement to commit or participate in two predicate offenses. As set forth above, the complaint cannot serve as evidence because it is not signed by someone with personal knowledge of the events. Even considering the complaint, it would not raise a question of material fact as to whether Salas agreed to participate or assist with predicate acts. First, none of the admissible evidence supports the claim that Salas interfered with commerce by threat of violence or acting under color of official right under 18 U.S.C. § 1951. Second, none of the other

9

predicate acts listed reference Salas as participating, agreeing to, or knowing about the alleged offenses such as wire fraud.

Third, even considering all of the paragraphs listed in Section II (Background) that mention Salas, nothing demonstrates that Salas agreed to participate in the conspiracy, knew of the conspiracy, or agreed to commit or participate in racketeering. For example, paragraph 30 of the complaint indicates that An introduced Kim to Salas, but that shows nothing more than acquaintance, not agreement. Similarly, paragraph 47 of the complaint states that Salas told Kim he had two years to complete construction after the lease was executed, but that shows nothing about an agreement or racketeering. Even though it is true that Salas entered into a consulting contract with Kim, there is no evidence to substantiate that it was entered into as a means of defrauding Kim. Salas admitted during his deposition that he was informed that he should not enter into the contract due to ethics rules (Salas Depo. 76), but that does not show an agreement with the other Defendants to defraud Kim.

Paragraph 70 of the complaint implicates Salas by claiming that on October 16, 2009, An called Kim to say that the Governor would restore the lease if he paid $140,000, which would be given to Salas to give to the Governor. However, the wire transfer spreadsheet shows no transfer on or near October 2009 in this amount.

Further, the allegations in paragraphs 77 and 82(g) of the complaint are based on information and belief, not personal knowledge, and therefore cannot serve as evidence to show an agreement.

Next, paragraph 82(f) indicates that Salas hid information from Kim, but no evidence other than the verified complaint substantiates this conclusion. Without more, this is insufficient to raise a question of material fact. *See Emeldi*, 698 F.3d at 719.

10

Additionally, paragraph 111 concludes that all defendants, including Salas, benefited from Kim's confidential information and funds, provided or sold Kim's information to another investor, and retained an interest in KSA. No other allegations set forth how Salas benefited from the information or funds, that he provided Kim's information to another investor—other than the allegation made "on information and belief"—and nothing suggests he retained an interest in KSA.

Finally, paragraph 114 claims that bribes were made by and through Salas as part of the enterprise. However, no facts are provided to substantiate this vague, conclusory statement.

Turning to Kim's Declaration, the Court has considered the material as a whole, and particularly paragraphs 22–25, 35, 37, and 47 as they pertain to Salas. As with the complaint, these statements are insufficient to raise a question of material fact. For example, paragraph 22 states that Taek asked Salas about leasing land. This in no way evidences a conspiracy or agreement to defraud Kim. In fact, nothing in that paragraph shows that Salas even knew about Kim at that time. Similarly, paragraph 23 indicates that Kim met with Salas, and An and Taek met with Salas about the lease. Nowhere does it indicate that when these meetings between An, Taek, and Salas occurred, they agreed to defraud Kim. This same problem is apparent in paragraphs 24, 25, 35, and 47. Salas was involved in arranging the lease for Kim while Salas was employed by DPL, but nothing indicates an agreement to defraud him.

Finally, although paragraph 37 claims that Salas demanded $100,000 from Kim and that Kim transferred $50,000 to Salas, the spreadsheet does not support this claim. Furthermore, the demand payment by Salas was "through An's translation," and "pursuant to An's instructions," he wired money to AJ Poker and Salas was to pick it up from there. Accordingly, nothing in the evidence

submitted suggests that Salas agreed to defraud Kim.

The brief in opposition describes the alleged conspiracy as An bringing in Taek, Taek bringing in Salas, and that all of them made use of Kim's money while pretending to help him. (Pls'. Opposition ¶ 90.) Plaintiffs' own evidence does not bear out this description. There are no facts to suggest that Salas was brought into the conspiracy by Taek or that he used Kim's money while defrauding him. At most, the evidence suggests that Salas received $20,000 under the consulting contract, but this arrangement in itself does not suggest a conspiracy or agreement to defraud Kim. Accordingly, Plaintiffs have failed to raise a question of material fact as to whether Salas conspired with the other defendants.

### C. Fraud and Aiding and Abetting Fraud Claims

Salas did not present argument in his written motion or reply brief as to why he is entitled to summary judgment on these claims. Plaintiffs similarly did not address these claims in their opposition brief. At the December 20, 2017 hearing, the Court gave notice that it was inclined to grant summary judgment on these claims because Plaintiffs had not pleaded the claims with particularity or submitted any evidence to support the claims as to Salas. Because Plaintiffs were previously on notice that Salas was seeking full summary judgment, despite his not briefing the Commonwealth law claims, Plaintiffs were given an additional opportunity to present argument during the hearing.

Having considered the complaint, documents submitted, and the oral arguments provided by Plaintiffs, the Court concludes that there is no question of material fact with respect to the Commonwealth law claims. Fraud claims must be pleaded with particularity. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (stating Rule 9(b) applies to state-law claims).

Generic allegations are insufficient to meet the standard of Rule 9(b); instead, the pleadings must identify "the circumstances constituting fraud," including "the time, place, and specific content of the false representations as well as the identities of the parties." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).

In this case, Salas is not mentioned by name in any of the allegations listed under the third and fourth causes of action. (*See* Compl. ¶¶ 147–161.) What he specifically said to Kim, as well as when and where it was said, is also not included. For example, under the third cause of action, Plaintiffs allege that "An, encouraged by the other Defendants, knowingly and intentionally misrepresented several material facts to Mr. Kim and KSA. Specifically, in advance of, during, and following the June, August and September 2007 project meetings, Defendants misrepresented to Mr. Kim and KSA continued interest in closing the hotel/casino project deal in Saipan." (*Id.* ¶ 149.) Nowhere does the complaint or Kim's Declaration include allegations as to how or when Salas encouraged An, and nowhere in those documents is there an explanation of how Salas allegedly misrepresented his interest in the hotel/casino project.

Because the discovery cutoff in this case was November 2, 2017 (ECF No. 51), and Plaintiffs could and should have amended the complaint earlier if new evidence had come to light to support the allegations, or at least presented the evidence in opposition to the motion for summary judgment, the claims against Salas are dismissed with prejudice.

//

/

13

## V. CONCLUSION

For the reasons set forth above, Defendant Salas's motion for summary judgment (ECF No. 54) is GRANTED. Accordingly, the jury trial date and all other hearings pertaining to Salas in this matter are hereby vacated.

Because there is no just reason for delay, the Clerk of Court is directed to enter final judgment in favor of Salas on all four claims pursuant to Fed.R.Civ.P. 54(b).

IT IS SO ORDERED.

Dated this 4th of January, 2018.

RAMONA V. MANGLONA
Chief Judge